May it please the court, counsel. My name is Jennifer Keeswetter and I'm here on behalf of John Jackson, the injured worker. I would like to reserve a minute for rebuttal if I           The previous argument did not contain any references to the record. Ms. McClendon. Sure. It appears that your arguments in your brief contains no citations to the record. Are you aware of that? Ms. McClendon. The argument does not? It should have. No, I apologize. It should have contained references to the record. Ms. McClendon. I'm sorry. Take a look at it. Ms. McClendon. This is a case where I'm asking this court to find that the commission's decision was against the manifest way to the evidence. And I realize that I have a tough burden because the findings here are factual findings of the commission. But I'm asking you to strongly look at the facts here and to find that the opposite conclusion is apparent here based upon the facts. Now, the arbitrator in this case found that there was an accident and awarded 81 benefits. And I understand, obviously, that is not binding upon you, but I would ask you to look at that because the arbitrator and the commission have very lengthy decisions here outlining all of the facts in this case. One of the main decisions here that the commission found, one of the main reasons that they found, well, we don't believe that there's an accident, had to do with the accident date. Now, as we know in workers' compensation, there really is nothing that provides for discovery. In other words, many documents we do not get until the date of hearing. Petitioner testified here that he was doing overhead work at Curlin's Hallmark, that he had been there for about a week and that's when he injured himself, and that after lunch that day he left due to the pain. That testimony was supported by his fiancée at the time, Jennifer, who was his wife at hearing, and also was supported by Greg Farmer, who really is a very independent witness here. He's a long-time employee and continued to work for Respondent, and said that he overheard a conversation with Mr. McDonald. Now, the commission here relies on the fact that, well, the application was amended at hearing to September 3rd instead of October 3rd. But what I would argue to this Court, and the reason I think the opposite conclusion is apparent here, is because the commission should look at whether the evidence supports a September 3rd accident here. It does. So, really, what's wrong with the fact that the application was amended once the job laws were provided? I don't think the case just turned on that. I mean, there's issues of credibility here, aren't they? I mean, and I think the commission referred to that, discrepancies in the testimony and the medical records. They noted expressly he had undergone two back surgeries before returning to work in 2002. He testified he felt 100 percent. Then he admitted in a cross-examination he first injured his back in a form late 80s or early 90s and received periodic treatment for the injury. I mean, and then you've got the medical records of Dr. Cheatham, contradict the claimant's testimony he was pain-free following. So, I mean, you do have some credibility issues, do you not? I agree there are some credibility issues here. But I think as far as the evidence in the record, if you look at the credibility issues, Petitioner testified that he did continue to seek chiropractor care after he was released in April of 2002. The chiropractor care, if you look at it, it's really all for right foot problems that he's having. It has nothing really to do until after September 3rd with the upper area of the right leg, the right sacral area, which supports a re-injury here. Also, Petitioner's wife at the time testified that he continued to have chiropractor care, but that he was able to work full duty. There's no dispute that from April to September he was able to work full duty, that he was able to carry on his regular activities of daily living. So to say that he felt 100 percent better, I don't know that you can say, I mean, this isn't someone who is significantly disabled from April to September, and Petitioner offered the records of Dr. Cheatham. Petitioner wasn't trying to hide anything there. What if the Commission just really didn't believe the claimant? Where does that leave your case? Then you still have medical treatment records of Dr. Cheatham, which starting September 6th start to mention overhead work and write lumbar sacral complaints due to overhead work. Does that help? Do the medical records necessarily help your client? I think they do. Don't they contradict his testimony, he was pain free? And they indicate that he continued to complain of symptoms throughout the period. So isn't there a contradiction there? It's minimal right foot complaints. Again, he continued his regular activity. The complaints are significantly different starting with his visit on September 6th. Also, Dr. Karen's records are consistent because he testified after the accident. He called, he made an appointment with Dr. Karen. It took him about a month to get in. He saw Dr. Karen on October 16th. And the history is that a month prior he was doing work overhead and that's when he started to notice the symptoms. And at that point, so the medical histories here are consistent with his report of accident and so are the job logs. There is no explanation in the record as to why he only worked a half day. And if you look at the job logs, he worked full days the other days. And even Mr. McDonald could not explain why he only worked a half day on September 3rd. And although I understand there are credibility issues here, the application was filed in 2004. We were the third attorney on it. However, Petitioner's testimony itself as to the events of the accident are consistent. He was at Kerlin's Hallmark. I would say that Petitioner should be punished for the fact that he didn't know the exact date until the job logs were produced. Especially given the fact that the original medical records support that date of accident. So I don't think here, when you have evidence that supports the state of accident, I think you have beyond the Petitioner's own testimony other credibility. And again, I point to Greg Farmer. What interest does he have in this case? He clearly has no interest and is the most credible person and testified as to overhearing a conversation. And that it was his understanding that it was in 2002. So Greg Farmer has no interest and continued to work for a respondent as of the date of hearing. So I believe strongly that this is a case where the opposite conclusion is apparent. The arbitrator got it right here. There's overwhelming evidence that he had an injury on September 3rd, 2002, and that it made his condition worse. There's no doubt that he'd only been back to work four or five months. But the medical records support a recurrent disc herniation. Also, the Commission points out that one of the reasons they don't find for an accident is because Dr. Karin and Dr. Herman admitted that this could have just been a recurrent disc herniation. Well, if you read their testimony, what Dr. Karin says is that really rarely happens, maybe 3 to 5% of the time would that happen. And Dr. Karin supports causation. Really an issue of causation, but I understand it may bear on accident. So, I mean, and then the fact that they say, well, the Commission also points out, this could have happened during an activity of daily living. Well, you could say that about any injury. The question is, what does the evidence support as to when it happened? And we have consistent medical records here in September of 2002, October of 2002, pointing to this overhead work. So I would ask you to look again at the medical evidence. I think it strongly supports the September 3rd, 2002, and I think it strongly supports some credibility on behalf of Petitioner in this case. So I would ask you to reverse the finding of the Commission. Thank you. If it pleases the Court, Counsel, Joe Foley on behalf of Defendant Clegg Perkins. Your case is where there's a question of whether there's a compensable accident. If you look at the Commission decisions on your own over the course of that time frame, over these many years, you see a common set of factors that you look for. Is there immediate reporting? Is there timely reporting? Is there medical care sought? Does that correspond contemporaneously with the alleged work accident? Do you have a consistent description of that accident? Do you have consistent accident date? Do you have actions by the Petitioner that would indicate that he is affected by the claimed injury, that his job is affected, his job duties? Do you have that consistent history or are there contradictions like Your Honor had indicated? In this case, the record clearly supports the fact that there is no work accident that had ever occurred. The opposite conclusion is not clearly apparent. We have a unanimous decision by the Commission that outlined again and again the incredible, the unreasonable, the inconsistent, the contradicted testimony from the Petitioner and the claims from Petitioner. Corresponding or in comparison with his own medical records, his own doctors, would fly in the face of what Petitioner claims in this case. It's not just he doesn't know the exact date of the loss, but that is a factor because we've gone anywhere from the original application October 17, 2002 to October 3, 2002 that he testified until his attorney corrected him at the time of arbitration when he said, oh, September 3, 2002. He indicates to one Dr. Novus January 2003, indicates to another Dr. Herman that it was March 2003. All over the place because if you look, there is not one single piece of paper, not one medical care provider indicates, yes, he reported an incident that occurred on September 3, 2002. Not one single piece of paper other than the amended application for adjustment in this case. Then you go to, aren't these factors something more than Petitioner being a poor historian or having a poor memory? Because not once did he testify. You know, I don't really recall what date it was. I'm not really sure. I estimate that it's this time. No, he was adamant. It's September 3, 2002. That's what his testimony was. I don't know if that makes any sense when you compare it to the fact that, as Your Honor pointed out, he indicated after his surgery in early 2002, he was completely pain-free. He had zero symptoms. As of April 2002, zero symptoms. His fiancée at the time indicated that, oh, he was back to all these activities. He was active both at work and outside of work setting. So I had asked upon cross-examination, so you know for a fact when you hurt your back because you are symptom-free, you are 100% pain-free when you hurt your back, so you know when it is. Yes, he says. I knew exactly when I hurt my back. If you know exactly when you hurt your back, what do you backtrack on? What do you need to look at the work logs to determine what date you hurt yourself? If you know for a fact how you did it and when you did it, why do you have to look at these things? And counsel points out, well, his third counsel, his third attorney, well, they still had this attorney when he reported to his own medical care provider, Dr. Eilers, that the accident date was October 17, 2002. So that argument fails as well. Then you have his description that his life was never the same after this date, that he had gone from pain-free, symptom-free, to this has changed his life forever. You have his description of the incident of him being sick, pale, sweaty, cold, but he doesn't go to the ER. He doesn't go to the doctor. His fiancée at the time works at the local hospital. He supposedly goes to lunch with her that day. He doesn't say, take me to the hospital. He doesn't even report it to his own family doctor, Dr. O'Neill, that he hurt himself. He doesn't even report it to the chiropractor he had been treating with for eight years leading up to this alleged work loss date, Dr. Cheatham. No, what he does is he comes to Dr. Cheatham three days after this alleged work injury, which is consistent with a regular August. The report was, come back and see us in two weeks. Well, that's about two weeks' time. So what does he do? He reports the same pain intensity. He reports the same symptoms. He doesn't say, I hurt myself. Oh, my gosh, the pain went through the roof. I am beside myself. I don't know what to do. You never heard any testimony from his girlfriend at the time that, oh, yeah, he came out and he said he hurt himself at work. You never heard that. You never heard from Dr. Kieran who he says he called the day that he injured himself and he talked to that doctor specifically and he got a light-duty work slip from that doctor that he gave to my client. Dr. Kieran never said he spoke to him. Dr. Kieran never indicated that he put him on light-duty. There is no light-duty slip in any of the medical records. There is absolutely no mention of any telephone report or call from plaintiff or petitioner on the day of this alleged injury. So you go back to, these are his own witnesses. This is his own documentary evidence that reflects contradiction after contradiction after contradiction because what does he say? I told Dr. Cheetham. So I asked, so if his records fail to reveal that, you would dispute his records? Yes, I would. I told Dr. Geisler. We produced Dr. Geisler's records. No report of any injury at work. So your position in essence is the commission determines the credibility of the witnesses and the weight to be given to the evidence and here they made the determination against the claimant. Absolutely. And it fully supports the, the entire record is fully supportive aside from petitioner's own self-serving claims and testimony. Medical records all lie in the face and are inconsistent and contradict his claims. So with that, your honors, unless you have any further questions, as you touched upon, the commission is entitled to deference. They do assess the credibility, resolve conflicts in the evidence, draw reasonable inferences from those. Throughout this, this case, plaintiff has, has been trying to create pieces to fit it in so you, you would determine are all, a governing body would determine that it is a defensible accident and they just don't fit. So this unanimous decision by the commission is not against the manifest weight of the evidence. An opposite conclusion is not clearly apparent and we would ask that the commission's decision be affirmed. Thank you, gentlemen. Ms. Morrow, you had, what, a 27-page disposition by the commission? Yes, your honor. And those commissioners were Dauphin, Lambourne, and Sherman? That is correct, your honor. And you couldn't convince any of those commissioners? I could, could not, your honor. Well, actually at that point, I was, I was the winner. They actually overturned it. I won at arbitration, your honor, and then the commission overturned it on, on the basis of accident. And the main things that I want to point out here and the reason I think the opposite conclusion is apparent and that the commission is wrong here is counsel pointed out there's not one single piece of paper here basically supporting accident. Yes, there is, there are. Number one, September 3rd records produced by respondents showing he worked half a day with no other explanation other than petitioner's testimony that he got hurt and left at noon. If you testify that he was working at Kerlin's Hallmark, that, that has always been what he's indicated and the job logs also support that, that he was doing overhead work. And Mr. McDonald consistently testified that he was doing overhead work with light fixtures at Kerlin's Hallmark and that he was the only worker there, that he would have been doing it. Also, the September 6th Dr. Cheatham records do indicate right lumbar sacral pain due to overhead work. So they do notice, noticeably note a change on September 6th. Now, a little bit here we cannot get much from Dr. Cheatham's records because he has about six office visits on a page with a couple of notes. So, you know, how thorough was his history, we don't know, but he does indicate on September 6th that this, this overhead working, which indicates that the client did report it to him. Also, Dr. Kieran, he returns to Dr. Kieran on October 16th indicating that a month prior he had done this overhead work. Why? Why did he return to Dr. Kieran if something hadn't happened that he had the increase of problems? It supports his testimony that in early September that he had this injury. These all support his testimony. And he testified at hearing that it took him about a month to get into Dr. Kieran. Counsel points out, well, why didn't he go to the ER? Why didn't he do all of these things? Well, he had right lumbar sacral pain. He had had that previously and he had had that before Dr. Kieran. So he did what he considered to be the logical thing was call his surgeon and return to him because he now had right lumbar sacral pain, which was something that he had experienced prior to his surgery. So I would ask you to take a look at the evidence here. I understand that I have a tough burden and 27-page decision by the commission, but I think if you look at the arbitrator's decision and the commission's decision, there's overwhelming evidence here that Petitioner suffered an accident. And I believe that not only Petitioner's credibility, but you have to look at the medical evidence and the documentary evidence here. Thank you. Thank you, Counsel. Clerk, we'll take the matter under guidance for disposition. We'll stand at recess for a short...